UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICOLE MARIE ROBERTSON, | CASE NO. 1:16CV1912 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL,[1] ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Nicole Marie Robertson ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on December 2, 2016, Plaintiff asserts that the administrative law judge ("ALJ") erred in finding that she did not meet Listing 12.05C. ECF Dkt. #15 at 8-12. On February 13, 2017, Defendant filed a response brief. ECF Dkt. #18. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I.  **PROCEDURAL HISTORY**

Plaintiff filed her application for SSI in February 2013. ECF Dkt. #12 ("Tr.") at 170.[2] In her application, Plaintiff alleges disability beginning on October 1, 2006. *Id.* The claim was denied initially and upon reconsideration. *Id.* at 67-100. Following the denial, Plaintiff requested a hearing before an ALJ, which was held on April 1, 2015. *Id.* at 42. On June 11,

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

2015, the ALJ denied Plaintiff's application for SSI. *Id.* at 13. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. Accordingly, the decision issued by the ALJ on June 11, 2015, stands as the final decision.

On July 29, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on December 2, 2016. ECF Dkt. #15. Defendant filed a response brief on February 13, 2017. ECF Dkt. #18. Plaintiff did not file a reply brief.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In the decision issued on June 11, 2015, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 7, 2013, the date of her application for SSI. Tr. at 18. Continuing, the ALJ determined that Plaintiff had the following severe impairments: cervical spondylosis; rediculitis; osteoarthritis of the left knee; seizure disorder; obesity; asthma; diabetes mellitus; borderline intellectual functioning; depressive disorder (not otherwise specified); and a learning disability. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

In making this finding, the ALJ discussed Listing 12.05C, stating that Plaintiff did not meet the criteria of Listing 12.05C because she did not have a valid verbal, performance, of full scale IQ of sixty through seventy and a physical or mental impairment imposing an additional and significant limitation of function. *Id.* at 21. The ALJ indicated that to satisfy the criteria of Listing 12.05C, a claimant must have sub-average intellectual functioning with deficits in adaptive functioning initially manifesting before age twenty-two. *Id.* at 21-22. After articulating the requirements of Listing 12.05C, the ALJ determined that despite her full scale IQ score of sixty-seven, Plaintiff testified that she worked when she was younger while in school. *Id.* at 22. The ALJ noted that Plaintiff had worked at Ryan's, McDonald's, and Dollar General, and that she was able to prepare salads and operate a fryer. *Id.* Continuing, the ALJ indicated that Plaintiff had no problems performing the multi-step task of hooking a trailer up to a four-wheeler and hauling wood. *Id.* Additionally, the ALJ stated that Plaintiff: was raising two children;

performed simple cooking and household chores; had the ability to mow the lawn; and cared for her neighbor's horses. *Id.* Further, the ALJ indicated that although Plaintiff testified that she was unable to work due to concentration and memory problems, as well as problems counting change, she reported to the consultative examiner that she did not want to work unless she was doing something that she liked. *Id.* The ALJ also noted that Plaintiff told her mental health clinician that she would like to go to work. *Id.*

After considering the record, that ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that Plaintiff: could frequently push or pull with the upper extremities; could never climb ladders, ropes, or scaffolds; could occasionally kneel, crouch, or crawl; could frequently climb ramps and stairs; could frequently stoop; could not drive commercially; was limited to occasional exposure to extreme cold, extreme heat, and irritants such as fumes, odors, dusts, and gases; could never use hazardous machinery or be exposed to unprotected heights; was limited to simple, routine, repetitive tasks; was limited to work in a low-stress job, defined as only occasional changes in the work setting; and was limited to work allowing her to be off task up to five percent of the workday. Tr. at 22.

When discussing Plaintiff's RFC, the ALJ addressed a functional capacity evaluation ("FCE") Plaintiff underwent on April 23, 2013. Tr. at 25. The ALJ indicated that the FCE report stated that Plaintiff was able to: lift fifteen pounds from the floor to her shoulder; lift twenty pounds from the floor to her waist; and lift twenty pounds from her waist to her shoulder on an occasional basis. *Id.* Continuing, the ALJ stated that the FCE report indicated that Plaintiff demonstrated the ability to sit for forty minutes at a time and stand for forty minutes at a time. *Id.* The ALJ then found that the FCE report showed that Plaintiff had no significant functional limitations. *Id.* Next, the ALJ indicated that Plaintiff's treating physician, Robert Herbert, D.O., accepted the findings and limitations from the FCE essentially indicating that

Plaintiff could perform light work. *Id.* The ALJ assigned this portion of Dr. Herbert's opinion great weight.[3] *Id.* at 25 (citing Tr. at 527-28).

Next, the ALJ indicated that Plaintiff had no past relevant work, was a younger individual on the date the application was filed, had at least a high school education and was able to communicate in English, and that the transferability of job skills was not an issue because Plaintiff did not have past relevant work. Tr. at 30. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, since February 7, 2013, the date the application was filed. *Id.* at 31.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

---

[3]The ALJ assigned great weight to the opinion submitted by Dr. Herbert on April 24, 2013, incorporating the FCE findings. Tr. at 25. Dr. Herbert submitted another opinion on July 1, 2013. *Id.* at 579-80. The ALJ assigned partial weight to the second opinion issued by Dr. Herbert. *Id.* at 26. Plaintiff does not argue that the ALJ improperly weighed Dr. Herbert's opinions. *See* ECF Dkt. #15.

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted).

## V.   ANALYSIS

Plaintiff asserts that the ALJ erred in finding that she did not meet Listing 12.05C.  ECF Dkt. #15 at 8-12.  The portion 20 C.F.R. Part 404, Subpart P, Appendix 1, setting forth Listing 12.05C reads:

> Intellectual disability refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports the onset of the impairment before age 22.
>
> The required level of severity for this disorder is met then the requirements in A, B, C, or D are satisfied.
>
> > C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Plaintiff first asserts that she has significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, and that the evidence demonstrates or supports the onset of the impairment before age twenty-two.  ECF Dkt. #15 at 9.  Continuing, Plaintiff correctly recognizes that "[a]daptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills."  *Id.* (quoting *West v. Comm'r of Soc. Sec.*, 240 Fed.Appx. 692, 698 (6th Cir. 2007) (internal citation omitted)).  In support of her contention, Plaintiff states that the record establishes that she was in special education due to a cognitive disability and that she was noted to meet the criteria establishing a cognitive disability by displaying delays in her intellectual, academic, and adaptive behavior that interfered significantly with educational performance.  *Id.*  Plaintiff indicates that J. Joseph Konieczny, Ph.D., a consultative examiner, stated that she showed moderate deficits in her awareness of the rules of social judgments and conformity and mild deficits in her overall level of judgment, and that she appeared to require supervision and monitoring in the management of her daily activities and in handling her financial affairs.  *Id.*  Additionally, Plaintiff notes that the ALJ found that she was moderately limited in her activities of daily living.  *Id.*

Next, Plaintiff avers that she meets the Listing 12.05C requirement of having an IQ score between sixty and seventy.  ECF Dkt. #15 at 10.  Plaintiff indicates that testing performed in

-6-

December 2009 during the consultative examination revealed a full scale IQ score of sixty-seven. *Id.* (citing Tr. at 284). Continuing, Plaintiff asserts that the ALJ mischaracterized and ignored evidence indicating that she meets Listing 12.05C. *Id.* Specifically, Plaintiff cites her testimony that she: had problems counting change at previous jobs and required the assistance of her co-workers; quit prior jobs because of her problems counting change; had difficulty cooking because it required measuring and keeping track of time; and had to have someone with her at all times due to seizures. *Id.* Additionally, Plaintiff cites statements she made during a psychological evaluation indicating that her family helped with childcare, laundry, grocery shopping, and money management. *Id.* Plaintiff also indicates that Sue Smith, a nurse practitioner, stated that she: had extreme and marked limitations in understanding and memory, sustained concentration, persistence, and adaptation; had marked limitations in social interaction; was extremely limited intellectually; had a mood disorder with poor impulse control and concentration; and would need help managing benefits. *Id.* at 11.

Continuing, Plaintiff asserts that she also meets the Listing 12.05C requirement that, in addition to a full scale IQ of sixty to seventy, she had a physical or mental impairment imposing an additional and significant work-related limitation of function. ECF Dkt. #15 at 11. Specifically, Plaintiff states that the ALJ found that Plaintiff's severe impairments included: cervical spondylosis; radiculitis; osteoarthritis of the left knee; seizure disorder; obesity; asthma; diabetes mellitus; and depressive disorder (not otherwise specified). *Id.* Plaintiff argues that these impairments impose additional and significant work-related limitations of function. *Id.*

Defendant contends that Plaintiff failed to present evidence establishing that she had an intellectual disability under Listing 12.05C. ECF Dkt. #18 at 6-9. Continuing, Defendant states that the ALJ recognized that Plaintiff scored a full scale IQ score of sixty-seven in December 2009. *Id.* at 7. However, according to Defendant, this IQ score, reflecting mild mental retardation, was not a valid estimate of Plaintiff's intelligence. *Id.* Defendant indicates that the examining psychologist, Dr. Konieczny, observed that Plaintiff's presentation and history demonstrated a higher level of cognitive functioning than reflected by the IQ score. *Id.* (citing

Tr. at 284). Additionally, Defendant states that Dr. Konieczny went on to assess that Plaintiff's intelligence was in the borderline range. *Id.*

Next, Defendant avers that the ALJ, like Dr. Konieczny, observed that despite her full scale IQ score of sixty-seven, Plaintiff's work history and daily activities demonstrated that her cognitive dysfunction did not rise to the level required to satisfy the criteria of Listing 12.05C. ECF Dkt. #18 at 7 (citing Tr. at 21-22, 27-28). In support of this assertion, Defendant states that Plaintiff testified that she previously worked at McDonald's, Ryan's, and Dollar General. *Id.* Additionally, Defendant indicates that mental health treatment notes reflected that Plaintiff worked on her neighbor's farm caring for horses. *Id.* (citing Tr. at 564, 572, 600). Defendant also notes that Plaintiff reported that her daily activities consisted of feeding dogs, cleaning the yard, mowing grass, hooking a trailer up to a four-wheeler to haul wood, and occasionally working on bikes and vehicles. *Id.* at 7-8 (citing Tr. at 292). Continuing, Defendant indicates that Plaintiff helped care for her grandfather in the summer of 2014. *Id.* at 8 (citing Tr. at 582, 587). Based on the above assertions, Defendant contends that the mental requirements to perform such work and daily activities demonstrated that Plaintiff was not suffering from an intellectual ability, but rather that she maintained sufficient cognitive functioning to perform at least simple repetitive tasks in a low-stress job environment. *Id.*

Insofar as Plaintiff claims her past employment did not contradict the existence of an intellectual disability and that she had to leave these jobs due to difficulties performing the work, Defendant states that Plaintiff told Dr. Konieczny that she had worked at McDonald's for a period of twelve months. ECF Dkt. #18 at 8 (citing Tr. at 282). Defendant argues that Plaintiff's ability to maintain her employment for such an extended duration strongly suggests she was able to adequately perform her duties, especially since she was able to maintain this employment while simultaneously attending high school. *Id.* (citing Tr. at 258). Additionally, Defendant notes that when describing her work on a neighbor's farm to Nurse Smith, Plaintiff did not indicate that she had difficulty caring for the horses, and instead said that she "really [was] having fun doing it." *Id.* (citing Tr. at 564, 572, 600).

Finally, Defendant addresses Plaintiff's reliance on the questionnaire completed by Nurse Smith, the treating nurse practitioner. ECF Dkt. #18 at 8-9. Defendant avers that while Nurse Smith assessed that Plaintiff had marked to extreme mental limitations due to her mood disorder and "very limited" intellect, her findings were directly at odds with her treatment notes. *Id.* Continuing, Defendant asserts that Nurse Smith's treatment notes consistently indicated that Plaintiff was "doing well" with a stable mood, and failed to document any significant deficits in cognition. *Id.* at 9 (citing Tr. at 297, 300, 307, 311, 315, 564, 569, 572, 582, 587, 592, 597, 600, 603). Additionally, Defendant contends that Nurse Smith failed to reconcile Plaintiff's ability to work on her neighbor's farm and engage in other various daily activities despite her purportedly marked to extreme mental limitations. *Id.* According to Defendant, even if Nurse Smith was an acceptable medical source, her opinion was entitled to little probative value as it was not supported by a detailed explanation or clinical findings.[4] *Id.* For the reasons stated above, Defendant maintains that while Plaintiff had an IQ score falling within the requisite range for Listing 12.05C, other evidence in the record undermined the validity of the test score and supported the ALJ's determination that she did not meet Listing 12.05C.

The ALJ did not err when finding that Plaintiff did not meet the criteria of Listing 12.05C. The undersigned agrees that a valid full score IQ of sixty-seven puts Plaintiff within the IQ range contemplated by Listing 12.05C. However, an IQ score of sixty-seven alone does not meet the listing, as Plaintiff must also demonstrate "a physical or other mental impairment posing an additional and significant work-related limitation of function." Plaintiff fails to show that she has an physical or mental impairment posing an additional and significant work-related limitation of function. Although Plaintiff asserts that the severe impairments found by the ALJ

---

[4]Defendant correctly states that nurse practitioners are not acceptable medical sources and are instead classified as "other sources," and that, as such, their opinions are not entitled to the same deference generally given to the opinion of a treating medical source. ECF Dkt. #18 at 9, n. 6 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); 20 C.F.R. § 416.913(d)); To support the proposition that Nurse Smith's opinion was entitled to little probative value as it was not supported by a detailed explanation or clinical findings, Defendant cites *Buxton v. Halter*, 246 F.3d 762 (6th Cir. 2001). *Id.* In *Buxton*, the Sixth Circuit explained that and "ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Id.* at 773.

satisfy this requirement, the ALJ determined that her past work history and daily activities suggest otherwise. The undersigned agrees.

Plaintiff's claim that she has a physical or other mental impairment posing an additional and significant work-related limitation of function is undermined by her work history and daily activities. Despite Plaintiff's argument that the ALJ's finding of severe impairments means that she satisfies the Listing 12.05C requirement of an additional and significant work-related limitation of function, the ALJ did not indicate that the severe impairments would cause a significant work-related limitation of function. The ALJ stated that "[t]hese impairments cause more than minimal limitations in [Plaintiff's] ability to perform basic work-related activities and are therefore severe for purposes of the Social Security Act." Tr. at 18. Moreover, the ALJ found that Plaintiff did not meet the requirements of Listing 12.05C, therefore indicating that Plaintiff's severe impairments did not give rise to a significant work-related limitation of function. *See* Tr. at 21-22. Other then citing the ALJ's opinion that she had severe impairments, and briefly indicating that she had difficulty at prior jobs, Plaintiff does not explain how these impairments caused a significant work-related limitation of function. *See* ECF Dkt. #15 at 11-12.

Additionally, the record of evidence supports the finding that Plaintiff does not have a physical or other mental impairment posing an additional and significant work-related limitation of function. Although Plaintiff testified that she was unable to maintain employment due to difficulties performing the work, she maintained employment at McDonald's for a period of twelve months while completing high school. Tr. at 52-53, 282. Plaintiff's daily activities also support the ALJ's conclusion as she was capable of performing a range of activities including: helping with the horses on a neighbor's farm; cleaning her yard; mowing her lawn; hooking a trailer up to a four-wheeler to haul wood;"sometimes" working on bikes and vehicles; helping care for her grandfather; performing simple cooking tasks; and participating in cleaning and household activities. *See* Tr. at 20, 22, 292. Additionally, insofar as Plaintiff relies on Nurse Smith's opinion regarding her impairments, Defendant is correct when stating that her opinion is inconsistent with the her treatment notes, which do not describe the extreme limitations

contained in the opinion. *See* Tr. at 297, 300, 307, 311, 315, 564, 569, 572, 582, 587, 592, 597, 600, 603).

Plaintiff carries the burden of proving that she suffers from a disability within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). Here, Plaintiff has failed to prove that she has a physical or other mental impairment, beyond a full scale IQ score of sixty-seven, posing an additional and significant work-related limitation of function. As such, Plaintiff has failed to establish that the ALJ erred in finding that she did not meet Listing 12.05C. Moreover, for the reasons stated above, the ALJ's decision is supported by substantial evidence.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: August 28, 2017          */s/George J. Limbert*
                               GEORGE J. LIMBERT
                               UNITED STATES MAGISTRATE JUDGE